UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FREDERICK SPENCER,                     )
                                        )
                Petitioner,             )
                                        )
        v.                              )        No.  4:03CV1756  TIA
                                        )
JAMES PURKETT,                          )
                                        )
                Respondent.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Frederick Spencer's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## Procedural History

Petitioner is presently incarcerated at the Eastern Diagnostic, Reception, and correctional Center (ERDCC) located in Bonne Terre, Missouri, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri. On August 30, 1999, a jury convicted petitioner of three counts of forcible sodomy and three counts of forcible rape. (Resp. Exh. B, pp. 70, 71, 74, 75, 76, 77) The Circuit Court for St. Louis City, Missouri, sentenced petitioner to a total of 15 years imprisonment. (Resp. Exh. B, pp. 79-83) The Missouri Court of Appeals affirmed the conviction and sentence on May 29, 2001. State v. Spencer, 50 S.W.3d 869 (Mo. App. 2001). On September 21, 2001, Petitioner filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Resp. Exh. G, pp. 5-24) He filed a First Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing on January 30, 2002. (Resp. Exh. G, pp. 25-187) The motion court denied the Rule 29.15 motion, and petitioner appealed that

denial. (Resp. Exh. G, pp. 192-233) On December 7, 2004, the Missouri Court of Appeals affirmed the judgment of the motion court without an extended opinion. Spencer v. State, 156 S.W.3d 365 (Mo. App. 2004).

On December 4, 2003, petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. §2254 in federal court. He filed an Amended Petition on June 30, 2005, raising seven grounds for habeas relief.

## **Exhaustion Analysis**

Before the undersigned may consider the merits of the petition for a writ of habeas corpus, the petitioner must demonstrate that he has exhausted his state court remedies. 28 U.S.C. § 2254 (b). Here, respondent concedes that petitioner has exhausted all of his state court remedies by either fairly presenting his claims to the Missouri state courts or by procedurally defaulting on the state remedies available to him.

## **Petitioner's Claims**

In his petition for habeas relief, petitioner raises the following seven grounds:

(1)     The trial court lacked jurisdiction to try Petitioner because the statute of limitations had lapsed;

(2)     Trial counsel was ineffective for failing to raise the statute of limitations defense;

(3)     Plaintiff was deprived of his right to a speedy trial;

(4)     Trial counsel was ineffective for failing the argue the speedy trial issue;

(5)     The State failed to prove forcible compulsion;

(6)     Trial counsel was ineffective on numerous grounds:

(a)     Counsel failed to raise a res judicata defense;
(b)     Counsel failed to raise a statute of limitations defense;

(c) Counsel failed to raise a speedy trial defense;

(d) Counsel failed to investigate, interview or call alibi, fact, or impeachment witnesses;

(e) Counsel failed to investigate and call Larry Fletcher, Leo Weisman, Theresa Robinson, Janet Pullen, and Percy Harrington as impeachment witnesses;

(f) Counsel failed to enter into evidence exhibits G, H, I, J, and K, which were medical records of victim M.M.;

(g) Counsel failed to present an alibi defense;

(h) Counsel failed to impeach victim A.G. with prior inconsistent statements;

(i) Counsel failed to investigate and use the Job Corps files of victim A.G. for impeachment;

(j) Counsel failed to investigate Family Care Clinic records of victim A.G.; and

(k) Counsel failed to investigate and use victim M.M.'s probation files from the City of Kirkwood, Missouri; and

(7) The State used perjured testimony and false evidence at trial.

## Discussion

## Claim One

Petitioner first asserts that the state court lacked jurisdiction to try and convict him because the state statute of limitations had lapsed. The Respondent contends that this claim is non-cognizable, as it is not a federal constitutional claim. While Petitioner argues that his claim is actually an *ex post facto* claim under the U.S. Constitution, the undersigned finds that Petitioner is not entitled to habeas relief on this claim.

First, a federal court may grant a habeas petition only were the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Respondent correctly asserts that "a state court's failure to properly apply a state statute of limitations does not violate due process, or, indeed, any other provision of the constitution or a federal statute."

Loblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000) (citations omitted). Thus, Petitioner's claim that the state court failed to apply the state statute of limitations is non-cognizable.

Furthermore, to the extent that Petitioner raises an *ex post facto* claim in his petition, the undersigned notes that he did not raise this claim in state court. (Resp. Exh. D) Thus, the claim is procedurally barred. Failure to present claims to the Missouri Court of Appeals during a petitioner's direct appeal or in a post-conviction proceeding constitutes procedural default. Evans v. Leubbers, 371 F.3d 438, 445 (8th Cir. 2004).

A federal court lacks the authority to reach the merits of procedurally defaulted claims unless petitioner can show cause and prejudice for the default or demonstrate a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995). "Establishing cause requires a showing of some external impediment that frustrates a prisoner's ability to comply with the state procedural rules." Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir. 1998). Examples of such cause include a showing that a factual or legal basis for a claim was not reasonably available to counsel, or that interference by officials made compliance impracticable. Murray v. Carrier, 477 U.S. 478, 488 (1986)(citation omitted).

The miscarriage of justice exception applies only in extraordinary cases, particularly if a constitutional violation resulted in the conviction of an innocent person. Schlup, 513 U.S. at 327; Murray, 477 U.S. at 496. This requires petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Schlup, 513 U.S. at 324. The standard compels petitioner to persuade the court that in light of new evidence no juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 329; Perry v. Norris, 107 F.3d 665,

666 (8th Cir. 1997). The Supreme Court noted in <u>Schlup</u> that claims of actual innocence are rarely successful because this type of evidence is usually unavailable. <u>Id.</u>

In his Traverse, Plaintiff argues that his attorney was ineffective for failing to raise the limitations defense on appeal. (Traverse, p. 22) While ineffective assistance of counsel may be cause to excuse a procedurally defaulted claim, "in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." <u>Williams v. Kemna</u>, 311 F.3d 895, 897 (8th Cir. 2002) (citations omitted).

In the present case, the record shows that petitioner did raise an ineffective assistance of counsel claim on appeal from the denial of his 29.15 motion. (Resp. Exh. Q) However, that claim pertained to trial counsel's failure to investigate and present impeachment evidence. (Resp. Exh. Q) In order to avoid procedural default, a petitioner must raise the same factual grounds and legal theories in the state courts as those raised in the federal petition. <u>Wemark v. Iowa</u>, 322 F.3d 1018, 1021 (8th Cir. 2003) (citations omitted). Petitioner's present ineffective assistance of appellate counsel claim is based on different facts and theories. Therefore, he failed to properly raise the claim in state court, and he may not assert ineffective assistance of counsel as cause for his default.

Moreover, to the extent that Petitioner's ineffectiveness claim actually relates to post-conviction appellate counsel for failure to argue ineffective assistance of trial counsel in the 29.15 appeal, this claim is not properly before the Court. "Ineffective assistance of post-conviction counsel may not be the basis of federal habeas relief." <u>Anderson v. Bowersox</u>, 262 F.3d 839, 842 (8th Cir. 2001). Furthermore, it cannot constitute cause for procedural default. <u>Reese v. Delo</u>, 94 F.3d 1177, 1182 (8th Cir. 1996).

In addition to Petitioner's failure to show cause, the undersigned finds that Petitioner is unable to demonstrate that he is actually innocent. While Petitioner has presented numerous exhibits and filed a plethora of pleadings, he has not come forth with new, reliable evidence not presented at trial. Schlup, 513 U.S. at 324. Petitioner's primary argument to support his actual innocence contention pertains to medical records allegedly demonstrating that Petitioner's Therapist-Patient relationship with victim M.M. was consensual and pre-dated any probation stipulation. Further, he maintains that he did not provide any counseling services to victim A.G. during the time in question. (Pet. Exh. CC, DD) In addition, Petitioner offers M.M.'s Kirkwood Police Department files and A.G.'s Job Corps information. (Pet. Exh. PP, QQ)

Although Petitioner asserts that this is new evidence which exonerates him, such is not the case. Evidence is not new where it was available at trial or could have been discovered earlier by exercising due diligence. Morris v. Dormire, 217 F.3d 556, 559 (8th Cir. 2000). Here, the information was available to Petitioner's counsel at the time of trial. Indeed, Petitioner claims that counsel was ineffective for failing to investigate and submit medical records, police records, and job corps records of the victim(s). Petitioner has submitted these documents at various times throughout the state and federal proceedings. Further, to the extent that any of the evidence was not available at trial, all of the evidence could have been discovered earlier by exercising due diligence. Thus, Petitioner is unable to demonstrate actual innocence and is unable to overcome the procedural bar. Claim One, therefore, will be dismissed.

### Claims Two, Four and 6(a)-(c), (f)-(k)

Petitioner's second claim alleges that trial counsel was ineffective for failing to raise the statute of limitations defense. Plaintiff asserts this claim again in claim six, sub-part b. Petitioner also

contends in claims four and six (c) that counsel was ineffective for failing to object to the lack of a speedy trial. In claim six (a), Petitioner alleges that counsel failed to raise a res judicata defense. Finally, in claims six (f) through (k), Petitioner argues that counsel failed to enter M.M.'s medical records into evidence; failed to present an alibi defense; failed to impeach A.G. with prior inconsistent statements; failed to investigate and use A.G.'s Job Corps files; failed to investigate Family Care Clinic records of A.G.; and failed to use M.M.'s probation files. The undersigned finds that Petitioner procedurally defaulted on all of these claims.

Failure to appeal the denial of postconviction relief to the Missouri Court of Appeals constitutes a procedural default. Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (citations omitted). Here, petitioner failed to raise these specific claims in his appeal from the denial of his postconviction motion. (Resp. Exh. Q) Therefore, his aforementioned claims of ineffective assistance of counsel are procedurally barred.

Review of the postconviction appeal demonstrates that Petitioner did not raise this claim on appeal. Indeed, he raised only one claim in the Missouri Court of Appeals. (Resp. Exh. Q) Thus, Petitioner has defaulted on this claim and can overcome this default only by showing cause and prejudice or actual innocence. As stated above, Petitioner is unable to demonstrate either.

Petitioner argues in his various pleadings, however, that he has not defaulted on this claim because he raised it in his pro se supplemental appellate brief. The undersigned disagrees. Petitioner cites Clemmons v. Delo, 124 F.3d 944 (8th Cir. 1997) for the proposition that he fairly presented his claim to the state court by submitting a supplemental brief. Id. at 948. While the Eighth Circuit Court of Appeals in Clemmons discussed the merits of the case after the petitioner instructed counsel to raise the additional issues on appeal and then attempted to file the supplemental brief in the

Missouri Supreme Court *pro se*, the <u>Clemmons</u> court also noted that the petitioner fairly presented his claim in the state court "[i]n the perhaps unique circumstances of this case." <u>Id.</u>

At the time the petitioner in <u>Clemmons</u> attempted to submit his brief to the Missouri Supreme Court, acceptance of a *pro se* brief was discretionary. Indeed, the court further noted:

> No rule of court or reported Missouri case of which we are aware specifies the circumstances under which Missouri appellate courts allow pro se briefs. A state procedural rule must be regularly adhered to if it is to be an adequate state ground supporting a procedural bar. . . . Sometimes Missouri courts allow pro se briefs, and sometimes they do not. That is their prerogative. But in the absence of regularly applied criteria, the decision not to allow such a brief cannot be said to rest on a regularly applied rule of state procedural law.

<u>Id.</u> at n. 3. However, the Missouri Court of Appeals enacted Rule 380 in 1995, which mandated that, "[i]n any case where a party is represented by counsel, the clerk shall not accept for filing any pro se briefs, pleadings, or other papers."[1] In addition, "[t]he Court may accept a timely pro se motion for rehearing or application for transfer filed after a decision in a . . . [Rule] 29.15 appeal if counsel for the party has not filed a motion for rehearing or application for transfer, any pro se motion received or accepted shall be returned in accordance with the procedure in section (a)." Mo. Ct. App. E.D. Rule 380(b). The rule does not apply to pro se pleadings or papers directed to the court which concern counsel. Mo. Ct. App. E.D. Rule 380(c).

In the instant case, Petitioner filed a Motion Requesting Permission to File Supplemental

---

[1] The Eighth Circuit Court of Appeals acknowledged the distinction between filing pro se briefs in the Missouri Supreme Court and the Missouri Court of Appeals in <u>Hall v. Leubbers</u>, 296 F.3d 685, 695 n.4 (8th Cir. 2002). The <u>Hall</u> court noted, "[t]he Missouri Supreme Court has historically permitted defendants to file supplemental pro se briefs even when represented by counsel . . . . Each district of the Missouri intermediate appellate court has a rule prohibiting the practice, however." <u>Id.</u> (citations omitted).

Appellant's Opening Brief in Exception to Local Rule 380 in the Missouri Court of Appeals. [Doc. #126] In that motion, Petitioner asserted that he "repeatedly communicated, in writing, his desire to be the master of his own case and has firmly asked that she does not abandon or waive any claim without speaking with him." According to Petitioner, his attorney did not respond to or acknowledge the requests. Counsel raised only one claim of ineffective assistance of counsel in the appellate brief. Upon submission of Petitioner's Supplemental Brief, the Missouri Court of Appeals denied the motion for permission to file and denied Petitioner's subsequent Motion to Strike Counsel's Opening Brief and Permission to File Pro Se Brief Out of Time. Spencer v. Missouri, No. ED83959 (Mo. App. July 16, 2004 and September 2, 2004) (www.courts.mo.gov/casenet). The court followed the mandate of Rule 380 and directed the Clerk's Office "to not accept appellant's pro se brief pursuant to Eastern District Rule 380." Id.

As previously stated, "[a] state procedural rule must be regularly adhered to for it to be an adequate state ground leading to a procedural bar." Hall v. Luebbers, 296 F.3d 685, 695 (8th Cir. 2002) (citation omitted). Rule 380 prohibits filing pro se briefs, and there is no evidence before this Court to indicate that it is not a procedural rule regularly adhered to by the Missouri Court of Appeals. See Moore v. Sachse, 421 F. Supp.2d 1209, 1216-1217 (E.D. Mo. 2006) (finding claims procedurally defaulted where petitioner did not adequately present his claims to the Missouri Court of Appeals because the court refused to accept a supplemental pro se brief under Rule 380 and where "nothing before the Court shows such rule not to be regularly adhered to"). Therefore, Petitioner's claims 2, 4, 6 (a)-(c), and 6 (f)-(k) are procedurally defaulted, and this Court cannot review the

merits. As previously stated, Petitioner is unable to demonstrate either cause and prejudice or actual innocence to overcome this procedural bar.[2] Thus, the Court will dismiss these claims.

## Claim Three

Petitioner next argues that he was deprived of his right to a speedy trial. The Respondent contends that Petitioner procedurally defaulted on this claim because he did not raise it on direct appeal. The undersigned agrees. Review of Petitioner's appellate brief indicates that he did not raise the speedy trial issue on appeal. (Resp. Exh. D) Failure to present claims to the Missouri Court of Appeals during a petitioner's direct appeal constitutes procedural default. Evans v. Leubbers, 371 F.3d 438, 445 (8th Cir. 2004).

A federal court lacks the authority to reach the merits of procedurally defaulted claims unless petitioner can show cause and prejudice for the default or demonstrate a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995). Petitioner has not presented any evidence which would allow him to overcome the procedural bar. First, Petitioner fails to assert cause and prejudice for his default. To the extent that he claims ineffective assistance of appellate counsel as cause for not raising the speedy trial issue, this argument fails. (Traverse, p. 25) Ineffective assistance of counsel constitutes cause only where the petitioner properly raised the ineffectiveness claim in state court. Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002). Petitioner failed to properly present this particular claim of ineffective assistance of counsel to the Missouri Court of Appeals. Therefore, Petitioner is unable to demonstrate cause. Likewise, Petitioner has not presented any new reliable evidence of his innocence or proven that no reasonable juror would have found him guilty. Perry v.

---

[2] Petitioner may argue ineffective assistance of post-conviction appellate counsel as cause for his default. However, ineffective assistance of post-conviction counsel cannot constitute cause for procedural default. Reese v. Delo, 94 F.3d 1177, 1182 (8th Cir. 1996).

Norris, 107 F.3d 665, 666 (8th Cir. 1997) (citing Schlup v. Delo, 513 U.S. 298, 324, 329 (1995)). Thus, the Court may not reach the merits of claim three and will deny the claim as procedurally defaulted.

## Claim Five

Petitioner next asserts that there was insufficient evidence to convict him of forcible rape and forcible sodomy because the State failed to present any evidence of forcible compulsion. The Respondent replies that this claim fails on the merits, as the Missouri Court of Appeals reasonably determined that the there was sufficient evidence of "forcible compulsion" as required by Missouri law. The undersigned agrees that sufficient evidence exists to support a finding of forcible compulsion.

The Missouri Court of Appeals addressed this issue and found:

> In his first two points on appeal, defendant challenges the sufficiency of the evidence on his use of force necessary to sustain convictions of forcible sodomy and forcible rape against M.M. and A.G. In reviewing a case to determine whether the evidence was sufficient to support a conviction, we consider true all evidence favorable to the state as well as all reasonable inferences that may be drawn therefrom. *State v. Thiele*, 935 S.W.2d 726, 728 (Mo. App. 1996). Review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact could find the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993).
>
> As to both M.M. and A.G., defendant was charged with forcible sodomy and forcible rape. An element of each of these crimes is the use of "forcible compulsion." Sections 566.030 and 566.060. Forcible compulsion is either physical force that overcomes reasonable resistance or a threat expressed or implied that places a person in reasonable fear of death, serious physical injury, or kidnapping of himself or another person. Section 556.051(12).
>
> Defendant asserts that he did not exercise force against M.M. or A.G. that would satisfy the definition of forcible compulsion. We disagree. Physical force is force that is applied to the body. *State v.*

*Kilmartin,* 904 S.W.2d 370, 374 (Mo.App.1995) (quoting BLACK'S LAW DICTIONARY 1147 (6th ed.1990)). M.M. testified that defendant would "put [M.M's] head to his penis" and "told [her] to start." M.M. stated that she would react by "gagging and pulling back." Defendant then would "push" M.M.'s face against him. Defendant exerted actual physical force as to M.M. *See Kilmartin,* 904 S.W.2d at 374.

Defendant also exerted actual physical force as to A.G. She testified that defendant touched her stomach and "proceeded to fondle" her breasts under her shirt. A.G. further testified that defendant grabbed her and "pulled" her up by her arms and then he "bent" her over the chair and unzipped her pants. Defendant exerted physical force by grabbing A.G.'s arm and pulling her up and bending her over a chair. *See id.*

Given defendant applied physical force to M.M. and A.G., it is the "totality of the circumstances [that] determines whether this was physical force which would overcome reasonable resistance." *Id.* Reasonable resistance is that which is suitable under the circumstances. *Id.* Circumstances would include the "ages of the victim and the accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination and control over the victim; and whether the victim was under duress." *Id.*

Under the circumstances of this case, defendant's physical force was sufficient to overcome M.M.'s reasonable resistance. Defendant was M.M.'s psychologist. M.M. was referred to defendant because she suffers from schizophrenia and was seeking treatment. Defendant, by being M.M.'s therapist, was in a position of authority over M.M. Furthermore, each sexual attack took place when they were alone in defendant's office, which again placed defendant in a position of domination and control. M.M. stated that she felt she was forced to see defendant because it was a condition of her probation. In addition, M.M. testified she would have been kicked out of the hospital if she stopped going to defendant. Defendant told M.M. that no one would believe her because of her prior sexual assault accusations against her caseworker. In light of the *Kilmartin* factors, we find that defendant's physical force overcame M.M.'s reasonable resistance.

We also find under the totality of the circumstances, sufficient evidence that defendant used physical force to overcome A.G.'s reasonable resistance. A.G. was only sixteen years old at the time of the attack. She was a student with behavioral problems at school and was referred to see defendant. Defendant, as A.G.'s counselor, was

in a position of authority over A.G. Also, as with M.M., defendant raped and sodomized A.G. in his private office. Furthermore, defendant threatened A.G. stating that he could ruin A.G.'s chances of getting into Job Corps.

Defendant, however, argues that neither M.M. nor A.G. tried to punch, fight, or prevent defendant from engaging in any sexual activities. Missouri law holds that one may be guilty of rape even though the victim offers no physical resistance if she submits through fear of personal violence. *State v. Koonce,* 731 S.W.2d 431, 439 (Mo.App.1987). "Resistance never comes into play where a threat (constructive force) is employed." *Id.* (holding that evidence of defendant lifting victim off of her chair and then smashing her face into a bed and telling her he was going to put her to sleep while he pushed victim's face into his penis was sufficient evidence to establish forcible compulsion).

Likewise, the law does not require or expect the utmost resistance to sexual assault when it appears that such resistance would be futile or would provoke more serious injury. *State v. R.D.G.,* 733 S.W.2d 824, 827 (Mo. App. 1987). In *R.D.G.,* the defendant repeatedly raped and sodomized his seventeen-year-old stepdaughter. *Id.* at 826. The court held that there was sufficient evidence to support a finding of forcible compulsion where the defendant exerted force upon victim when he "grabbed [victim] by the arm" and victim tried to pull away and told the defendant to leave her alone. *Id.* Victim, however, testified that she did not scream because "[i]t wouldn't have done any good." *Id.* Defendant did not strike victim or threaten the victim overtly. *Id.* at 826-827. In the present case, M.M. testified that she did not resist because she thought it would be futile. She stated that defendant was much bigger than she. A.G. also testified that defendant was bigger than she was and that her failure to fight back stemmed from her fear that more harm would befall her if she resisted.

Furthermore, in *State v. Dee*, the court ruled that force coupled with an express threat to change victim's custody of her children satisfied the element of forcible compulsion. *State v. Dee*, 752 S.W.2d 942, 946 (Mo. App. 1988). The defendant was assigned by Division of Family Services (DFS) to be victim's caseworker. *Dee*, 752 S.W.2d at 944. The defendant raped and sodomized victim in her home during his visits. *Id.* The defendant would grab victim by her arm and push her to the floor or down on the bed and rape her. *Id.* The defendant had also put his knees across victim's arms and forced her to perform oral sex. *Id.* Victim testified that she "offered no physical resistance to appellant's sexual attack." *Id.* The defendant

also threatened victim to not tell because he would take her children away if she told. *Id.*

> This case is analogous to *Dee.* Here, defendant pushed M.M. and grabbed A.G. during his sexual assaults. With M.M., seeing defendant on a weekly basis was a condition of her probation, a violation of which could have resulted in jail time. Also, defendant told M.M. that no one would believe her if she told. With A.G., defendant threatened to ruin her chances of getting into the Job Corps if she told. As in *Dee,* we find that there was sufficient evidence from which a reasonable fact-finder could find that defendant's actions constituted forcible compulsion against both M.M. and A.G. to sustain defendant's convictions. We find no error. Points denied.

State v. Spencer, 50 S.W.3d 869, 873-875 (Mo. App. 2001); (Resp. Exh. F, pp. 3-7).

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). A federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. (quoting 28 U.S.C. § 2254(d)(1)). Findings of fact made by a State court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record). While Petitioner argues that the evidence was insufficient to demonstrate forcible compulsion, which is an element of forcible rape and forcible sodomy, Petitioner does not present clear and convincing evidence that the State court's findings of fact are erroneous. Therefore, the undersigned finds that the aforementioned facts are entitled to a presumption of correctness.

With regard to the legal conclusions, this Court may not grant habeas relief on a claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Petitioner asserts that A.G. was not his patient during the time of the alleged rape and that he did not have any control over the Job Corps process. [Doc. 119, p. 2; Pet. Exh. QQ] Further, he contends that M.M. continued to see Petitioner after her probation ended. [Doc. #49-1, p. 5; Pet. Exh. PP] Thus, Petitioner argues that he was not in a position of authority sufficient to prove forcible compulsion. [Doc. #49-1, p. 4] Petitioner also maintains that, because there was no resistence, the state had a greater burden to show physical force or threats, which the state failed to do. [Doc. #49-1, p. 6]

A federal court's review of a sufficiency of the evidence claim is limited to determining "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Liggens v. Burger 422 F.3d 642, 647 (8th Cir. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In the instant case, the undersigned finds that the evidence was sufficient to show forcible compulsion beyond a reasonable doubt.

Under Mo. Rev. Stat. §§ 566.030 and 566.060, a person commits the crimes of forcible rape and forcible sodomy by the use of forcible compulsion. The statutes define forcible compulsion as "the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse." Mo. Rev. Stat. §§ 566.030.1 and 566.060.1. **"'Forcible compulsion'** means either (a) Physical force that overcomes reasonable resistance; or (b) A threat, express or implied, that

places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person[.]" Mo. Rev. Stat. § 556.061(12).

First, the record demonstrates that the Petitioner did use physical force with both victims. A.G. testified that Petitioner grabbed her arm, pulled her up, pulled down her pants, and inserted his fingers into her vagina. (Resp. Exh. A-3, pp. 19-20; 51-52) M.M. stated that Petitioner would put her head to his penis and would push her face against him when she started gagging. (Resp. Exh. A-3, pp. 112-113) The undersigned agrees that this constitutes physical force. See State v. Niederstadt, 66 S.W.3d 12, 15 (Mo. banc 2002) (finding physical force where defendant committed several acts of deviate sexual intercourse).

The undersigned also finds that this physical force overcame reasonable resistance. Id. "Certainly, the law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or would provoke a more serious injury." Id. (citing State v. R.D.G., 733 S.W.2d 824, 827 (Mo. App. 1987)). "Rather, the force used must be calculated to overcome the victim's resistance and complete the act of deviate sexual intercourse." Id. (citing State v. Kilmartin, 904 S.W.2d 370, 374 (Mo. App. 1995)). Courts look to the totality of the circumstances when determining whether the force used was sufficient to overcome reasonable resistance. Id. The factors which courts consider include: (1) whether violence or threats come before the sexual act; (2) the victim's and the defendant's relative ages; (3) the setting and atmosphere where the incident occurred; (4) the extent to which the defendant was in a position of authority, domination, and control over the victim; and (5) whether the victim was under any duress. Id. (citations omitted). As stated in Niederstadt, "[e]ach case necessarily turns on its own facts." Id.

Here, the evidence demonstrated that Petitioner was much larger and stronger than the victims. (Resp. Exh. A-3, pp. 19, 111) M.M. believed that any resistance would be futile, and A.G. testified that she was afraid Petitioner would try to hurt her if she did fought him. (Resp. Exh. A-3, pp. 20, 22; 112-113) Both victims were referred to Petitioner for counseling. M.M. sought treatment for schizophrenia, and A.G. experienced behavioral problems at school. (Resp. Exh. A-3, pp. 11, 101) Furthermore, he was their therapist and in a position to exercise domination and control over the victims. (Resp. Exh. A-3, pp. 11, 108) In addition, the incidents occurred when the victims were alone with Petitioner in his office. (Resp. Exh. A-3, pp. 16-18, 114-115) With regard to M.M., she testified that she continued to see Petitioner because her therapy sessions with him became a condition of her probation and because she would have been kicked out the hospital if she stopped seeing him. (Resp. Exh. A-3, pp. 116-118) A.G. was only sixteen years old at the time, and she stated that Petitioner threatened to ruin her chances of getting into the Job Corps. (Resp. Exh. A-3, pp. 22-23) The undersigned thus agrees with the state court that this evidence was sufficient for a jury to find beyond a reasonable doubt that Petitioner used forcible compulsion in committing forcible rape and forcible sodomy. Therefore, Petitioner's fifth ground for habeas relief will be denied.

### Claims 6 (d) and (e)

Petitioner next claims that counsel was ineffective for failing to investigate and call alibi, fact, or impeachment witnesses Larry Fletcher, Leo Weisman, Theresa Robinson, Janet Pullen, and Percy Harrington. Respondent contends that the proposed impeachment testimony would not have constituted a defense and, therefore, counsel was not ineffective for failing to present such evidence.

As an initial matter, the undersigned finds, for the reasons stated above, that Petitioner procedurally defaulted on this claim with regard to Theresa Robinson and Janet Pullen. On appeal

from the denial of his Rule 29.15 motion, Petitioner argued that trial counsel was ineffective for failing to investigate and present impeachment evidence from Larry Fletcher and Leo Weisman. Failure to appeal the denial of postconviction relief to the Missouri Court of Appeals constitutes a procedural default. Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005) (citations omitted). Further, in order to avoid procedural default, a petitioner must raise the same factual grounds and legal theories in the state courts as those raised in the federal petition. Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) (citations omitted). Petitioner's present ineffective assistance of counsel claim with regard to Theresa Robinson and Janet Pullen is based on different facts than those presented to the Missouri Court of Appeals. Thus, the undersigned may not address the merits of that aspect of Plaintiff's claim.

With regard to Larry Fletcher and Leo Weisman, the undersigned finds that Petitioner's claim lacks merit. According to Petitioner, both gentlemen would have testified that the Missouri Department of Health never mandated that M.M. see Petitioner for counseling and that they did not know Petitioner, who had no control or influence over M.M.'s housing. In addition, Petitioner maintains that the witnesses would have testified that M.M. never complained to them about the alleged assaults and that they never threatened to release her from the housing program because of these complaints.

In the findings of fact and conclusions of law, the motion court found that Larry Fletcher was a social worker and Director of the Psychiatric Division of the Department of Mental Health. He worked in the assisted living program in which M.M. participated. The assisted living program provided support services to mentally ill people in order to enable them to live outside an institution. (Resp. Exh. G, p. 193) During an evidentiary hearing on Petitioner's post-conviction motion, Mr.

Fletcher testified that M.M. never complained that Petitioner had raped or sodomized her.  Further, he stated that M.M.'s continued participation in the program did not depend on favorable reports from the therapist.  Mr. Fletcher was not M.M.'s case monitor, so he did not have regular contact with her.  M.M. did contact him when she had problems with her service provider, which resulted in an investigation.  Mr. Fletcher only had contact with M.M. one or two times during 1994, and he stated that M.M. had little contact with the rest of the staff during that time period as well, although he was not present during any of her conversations with the staff.  None of the staff members reported any complaints made by M.M. against Petitioner.  Mr. Fletcher further testified that a public defender contacted him via telephone and asked whether a therapist could kick a person out of housing.  He was never contacted by Mr. Frankel or Mr. Kellum.  In addition, Mr. Fletcher did not know the content of conversations between M.M. and Petitioner.  (Resp. Exh. G, p. 193; Exh. H-1, pp. 3-21)

Leo Weisman was also a social worker with the Department of Health.  During the hearing, he testified that he may have met M.M. during the years she participated in the Supportive Community Living program and that he did not recall M.M. complaining about being raped or sodomized by Petitioner.  If she had done so, Mr. Weisman would have reported it to his supervisor, his director, and the Division of Aging.  He did not normally have direct contact with M.M., and he was not her case monitor.  During 1994, Mr. Weisman was sure he had contact with M.M. regarding her complaints against her service provider, specifically sexual allegations against her case manager, John Carthen.  Mr. Weisman did not personally interview M.M. regarding these allegations.  While Mr. Weisman was aware that M.M. saw Petitioner for therapy in 1994, he was never present during any meetings between them.  He guessed that he had contact with M.M. four or five times during

1994 and that he never discussed Petitioner with her. He stated that M.M. would have had more contact with other individuals in the program. Further, Mr. Weisman indicated that he had no idea about what Petitioner told M.M. about her ability to stay in the program and his power or control over her. While Mr. Weisman received a phone call from someone in the Public Defender's office, he never spoke with Leonard Frankel or Arthur Kellen. (Resp. Exh. G, p. 194; Ehx. H-1, pp. 22-30)

In the Conclusions of Law, the motion court found:

> Failure to call impeachment witnesses does not generally warrant relief for ineffective assistance of counsel because the facts even if true do not establish a defense. State v. Day, 859 S.W.2d 194, 196 (Mo. App. E.D. 1993); State v. Ray, 852 S.W.2d 165, 172 (Mo. App. S.D. 1993); State v. Roe, 845 S.W.2d 601 (Mo. App. 1992); State v. Askew, 822 S.W.2d 497, 503-504 (Mo. App. 1991); Lane v. State, 778 S.W.2d 769, 771 (Mo. App. 1989). See also, State v. Hubert, 923, S.W.2d 434, 438 (Mo. App. E.D. 1996) (prior inconsistent statement would not have established a defense). Failure to call a witness whose testimony would have been merely cumulative or would have only impeached a state witness does not establish ineffective assistance of counsel. State v. Hutton, 825 S.W.2d 883, 890 (Mo. App. 1992).
>
> The failure to call impeachment witnesses does not warrant relief where the facts if true would not establish a defense. The decision to impeach is presumed to be a matter of trial strategy, and to overcome such presumption movant must allege and show that the decision was not a matter of trial strategy and that the impeachment would have provided him with a defense or would have changed the outcome of the trial. State v. Gollaher, 905 S.W.2d 542, 548 (Mo. App. E.D. 1995).
>
> Here the fact that the victim [M.M.] did not complain to certain persons about the Defendant would not establish a defense. Additionally trial counsel elicited evidence and emphasized that while [M.M.] had complained about John Chassen and had in fact obtained a settlement based on her allegations against him, that there was no record made of any such complaints against the Defendant in this case. . . . Larry Fletcher and Leo Wiseman [sic] testified at the evidentiary hearing that they had not discussed Dr. Spencer with [M.M.]. . . . There is no reasonable probability that had these . . . persons testified that the result of the trial would have been different. This allegation

is denied.

. . . The fifth allegation in Movant's amended motion is that his trial counsel were ineffective for failing too [sic] investigate and secure the testimony of Larry Fletcher, who would have stated that, contrary to [M.M.'s] trial testimony, she was never required by the St. Louis State Hospital's housing program to see Movant lest her housing be taken away. Movant contends taht Fletcher would have testified that at no time did his agency ever impose such a requirement on [M.M.] and that his testimony would have impeached [M.M.'s] credibility in the area of compulsion.

Larry Fletcher, a social worker and the Director of the Psychiatric Division of the Department of Mental Health, testified that he worked in the Assisted Living Program in which one of the participants was [M.M.]. Mr. Fletcher testified that he had contact with her over the telephone when she called, that she contacted him when she had a problem with her service provider, and theat continued participation in the community living program does not depend on favorable reports from a therapist.

The Court finds that there is no reasonable probability that had Mr. Fletcher testified at trial as he did at the evidentiary hearing that the result of the trial would have been different. The testimony of this witness would not have provided a viable defense and it is not enough to show a conceivable effect on the outcome of the proceeding. This allegation is denied.

(Resp. Exh. G, pp. 207-209)

Petitioner claims that counsel was ineffective for failing to investigate and call alibi, fact, or impeachment witnesses Larry Fletcher and Leo Weisman. To establish ineffective assistance of counsel petitioner must satisfy a two prong test. Petitioner must demonstrate that counsel's performance was "deficient" and that such deficient performance "prejudiced" his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, Petitioner "must show that his counsel 'made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment.'" Osborne v. Purkett, 411, F.3d 911, 918 (8th Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts will presume that the

attorney's performance falls within the broad range of reasonable and professional assistance of counsel, as courts do not "'second-guess strategic decisions or exploit the benefits of hindsight.'" Id. (quoting Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997)) (citation omitted).  The prejudice prong requires that petitioner must prove that *but for* counsel's deficiency, the result of his trial would have been different. Id. at 694.  Because a habeas petition claiming ineffective assistance of counsel involves mixed questions of law and fact, legal conclusions are reviewed *de novo*, and state court findings of fact are presumed to be correct under 28 U.S.C. § 2254(d).  Sloan v. Delo, 54 F.3d 1371, 1383 (8th Cir. 1995) (citation omitted).

In the instant case, petitioner is unable to show that trial counsel's performance was deficient or that he was prejudiced.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  As stated above, the motion court found that the decision to impeach is a matter of trial strategy and Petitioner failed to show that the impeachment would have provided a defense or changed the outcome of the trial.  (Resp. Exh. G, pp. 208-209) The Missouri Court of Appeals summarily affirmed this decision. (Resp. Exh. Q and S)

Defense counsel's decision not to call these impeachment witnesses is "trial strategy entitled to substantial deference." Osborne, 411 F.3d at 918 (citation omitted).  The testimony simply showed that the witnesses did not discuss Petitioner with M.M.  Further, it indicated that M.M. was not required to see Petitioner in order to remain in the program.  However, as stated by the motion court, the testimony would not have provided Petitioner with a defense.  Neither witness could speak to the relationship between Petitioner and M.M., the discussions they had in therapy, or Petitioner's power and control over M.M.  However, the trial testimony showed that M.M.'s case manager required her to see Petitioner and that M.M. believed she would be kicked out of the housing program if she

stopped seeing Petitioner. (Resp. Exh. A-3, pp. 116-118) Because the testimonies of these witnesses would not have aided Petitioner's defense, counsel was not deficient for choosing not to call them.

Further, the state court, in applying <u>Strickland</u>, determined that had these witnesses testified, there was no reasonable probability that the outcome of the trial would have been different. Given their lack of knowledge regarding the relationship between Petitioner and M.M., their testimonies would have had little effect on the outcome of the proceedings. The undersigned thus finds that the state court did not unreasonably apply <u>Strickland</u> in finding that counsel's performance was not deficient and that Petitioner was not prejudiced. <u>See</u> <u>Bucklew v. Luebbers</u>, 436 F.3d 1010, 1018 (8th Cir. 2006) (finding that state court did not unreasonably apply <u>Strickland</u> where psychologist's testimony during guilt phase would not have produced a different outcome, as it could not negate the overwhelming evidence against the petitioner). Petitioner's claims of ineffective assistance of counsel will therefore be denied.

### Claim 7

Petitioner's final claim is that the State used perjured testimony and false evidence at trial. The record demonstrates that Petitioner failed to raise this claim either on direct appeal or on appeal from the denial of his Rule 29.15 motion. Therefore, the undersigned finds that Petitioner has procedurally defaulted on this claim. <u>Evans v. Leubbers</u>, 371 F.3d 438, 445 (8th Cir. 2004). This Court lacks the authority to reach the merits of this claim absent a showing of show cause and prejudice for the default or a fundamental miscarriage of justice. <u>Schlup v. Delo,</u> 513 U.S. 298, 314-15 (1995).

Petitioner fails to assert cause or prejudice for his default. However, he does claim his innocence in his Traverse, arguing that the perjured testimonies by M.M. and A.G. led to the finding

of forcible compulsion and to his ultimate conviction. (Traverse, Doc. #135, pp. 61-64) While Petitioner contests the victims' testimonies, he fails to come forth with new, reliable evidence not presented at trial showing that the testimonies were false. Schlup, 513 U.S. at 324; see also Morris v. Dormire, 217 F.3d 556, 559 (8th Cir. 2000) (evidence not new where available at time of trial or discoverable by exercising due diligence). Indeed, the evidence Petitioner does present fails to establish that the testimony was perjured and that the state knew or should have known of the perjury. English v. U.S., 998 F.2d 609, 611 (8th Cir. 1993).[3] Further, as previously stated, there was sufficient evidence of forcible compulsion based on the totality of the circumstances. Therefore, the undersigned will deny claim 7 contained in Petitioner's amended habeas petition.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Frederick Spencer for a writ of habeas corpus be **DISMISSED** without further proceedings.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file documents directed to and received by this Court on April 17, 2006, May 15, 2006, May 30, 2006, and June 12, 2006 and shall docket them as exhibits.

**IT IS FINALLY ORDERED**, pursuant to Section 2253 and Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), that no certificate of appealability shall issue from this Court.

                                          _____/s/ Terry I. Adelman_____

                                        UNITED STATES MAGISTRATE JUDGE

Dated this  26th  day of June, 2006.

_____

[3] For instance, while he presents evidence that he was not A.G.'s therapist on the date of the rape, he admits that he did have a patient-therapist relationship with A.G. (Traverse, Doc. #135, p. 63)